UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CARLOS ALBERTO BRITO PACHECO | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00151-JAW |
| | ) | |
| CRAIG SHEPLEY, *in his official capacity as Deputy Chief Patrol Agent of Fort Fairfield Sector, U.S. Customs and Border Protection*, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Finding the government's detention of a noncitizen without a bond hearing violates due process, the court grants in part and denies in part the noncitizen's petition for writ of habeas corpus and orders the government to conduct an initial custody determination within forty-eight hours of this order. If the government decides to continue detaining the noncitizen, the court further orders the government to obtain an authorizing warrant and to provide the noncitizen a bond hearing before an Immigration Judge within fourteen days of this order.

## I.    BACKGROUND[1]

Carlos Alberto Brito Pacheco, a resident of Portland, Maine, is an ethnically indigenous Ecuadorian citizen who fled his home country after experiencing racial

---

[1]    For the purposes of Mr. Brito Pacheco's petition and consistent with the parties' stipulation, the Court reviews the relevant facts as pleaded in Mr. Brito Pacheco's March 26, 2026 amended verified petition and accompanying attachments. *Min. Entry* (ECF No. 6); *Order* (ECF No. 14).

mistreatment. *Am. Verified Pet. for Writ of Habeas Corpus Pursuant to Fed. R. Civ. P. 15(a)(1)(A) and R. 65(a)* ¶¶ 1-2 (ECF No. 12) (*Am. Pet.*). Mr. Brito Pacheco entered the United States in August 2022 without inspection or detention by the U.S. Department of Homeland Security (DHS). *Id.* He fears returning to Ecuador and intends to apply for asylum. *Id.*

On March 12, 2026, DHS agents arrested and detained Mr. Brito Pacheco while he was working and delivering packages. *Id.* ¶ 3. Respondents transferred Mr. Brito Pacheco to U.S. Customs and Border Protection (CBP) custody in Fort Fairfield, Maine before CBP subsequently transferred him to Van Buren Station in Van Buren, Maine, where he is currently detained. *Id.*; *Min. Entry* (ECF No. 9).

On March 21, 2026, alleging that his detention violates federal law and due process, Mr. Brito Pacheco filed a verified petition for writ of habeas corpus seeking his immediate release from immigration detention. *Verified Pet. for Writ of Habeas Corpus* (ECF No. 1). That same day, the Court issued a seventy-two-hour emergency order, enjoining Respondents from transferring Mr. Brito Pacheco outside the District of Maine. *Emer. Order Concerning Stay or Transfer of Removal* (ECF No. 3).

At the teleconference of counsel on March 23, 2026, Respondents confirmed Mr. Brito Pacheco was in their custody in Van Buren, Maine when he filed his petition, clarifying there were no issues of personal jurisdiction or venue for the Court to consider. *Min. Entry*. The parties also agreed that, for purposes of this order, there are no factual disputes for the Court to resolve in this matter and stipulated to the facts in Mr. Brito Pacheco's verified petition and its accompanying attachments. The

2

parties also agreed to forgo an evidentiary hearing and oral argument, allowing the Court to resolve this matter on the parties' briefing only.

That same day, the Court ordered Respondents to show cause why Mr. Brito Pacheco's petition should not be granted, and extended the Court's March 21, 2026 no-transfer order pending further order of the Court, but authorizing Respondents to remove Mr. Brito Pacheco outside the District of Maine if necessary for him to attend a bond hearing before an Immigration Judge. *O.S.C.* (ECF No. 10).

On March 26, 2026, Respondents filed their response to the order to show cause, opposing Mr. Brito Pacheco's petition. *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 11) (*Resp'ts' Opp'n*). On March 26, 2026, Mr. Brito Pacheco filed his reply. *Pet'r's Reply to Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 13) (*Pet'r's Reply*). That same day, Mr. Brito Pacheco also filed an amended verified petition. *Am. Pet.*[2]

## II.    THE PARTIES' POSITIONS

Mr. Brito Pacheco alleges his detention violates the Immigration Nationality Act (INA) and his due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 26-44. Mr. Brito Pacheco maintains he is illegally categorized as a mandatory detainee pursuant to 8 U.S.C. § 1225(b), rather than a discretionary detainee under § 1226(a). *Id.* He argues Respondents' failure to conduct an initial

---

[2]    On March 26, 2026, the Court issued an order, permitting but not requiring Respondents to file an amended response in opposition to Mr. Brito Pacheco's amended petition. *Order*. The Court explained that if Respondents did not file an amended response, it would rule on the filings then before it. *Id.* That same day, Respondents notified the Clerk's Office they would not file an amended response. The Court therefore rules on the briefing before it.

custody determination and issue a warrant within forty-eight hours of his detention violates the INA, associated regulations, and his due process rights. *Id.* ¶¶ 26-29. He seeks a writ of habeas corpus ordering his immediate release. *Id.* at 16.

In their opposition, Respondents maintain Mr. Brito Pacheco is properly categorized as a mandatory detainee under § 1225(b)(2), as dictated by controlling agency precedent. *Resp'ts' Opp'n* at 1-2. However, Respondents acknowledge that "the caselaw from this Court [has] uniformly sustain[ed] challenges to DHS's interpretation of § 1225" and they concede Mr. Brito Pacheco's petition is not substantially distinguishable from that line of caselaw. *Id.*

In his reply, Mr. Brito Pacheco argues that Respondents have failed to show cause why his petition should not be granted. *Pet'r's Reply.* Consistent with the body of caselaw within this District, combined with Respondents' concession that his petition is not substantially distinguishable from that line of cases and their failure to produce the warrant authorizing his arrest, Mr. Brito Pacheco urges the Court to order his immediate release pending a bond hearing. *Id.* at 3-11.

## III.    DISCUSSION

### A.    Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Brito Pacheco's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always

4

been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)).  Furthermore, under habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf. *Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948).  Here, the Court retains jurisdiction over this matter, because Mr. Brito Pacheco filed his habeas petition when he was in custody in the District of Maine.

### B.    The Merits

Consistent with the mass of recent caselaw addressing this question on similar facts, the Court concludes that § 1225(b)(2) is inapplicable to Mr. Brito Pacheco, and he is therefore subject to discretionary detention under § 1226(a) and entitled to an initial custody determination and, if denied release, a bond hearing before an Immigration Judge to review that initial custody determination.

### 1.    Statutory Framework

#### a.    Mandatory Detention under Section 1225(b)(2)

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States."  8 U.S.C. § 1225(a)(1).  Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion).  Relevant here is

§ 1225(b)(2).[3]   Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  Thus, § 1225(b)(2) creates a mandatory detention scheme.  *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").  As other courts have recognized, this language requires that "several conditions must be met" to impose mandatory detention under § 1225(b)(2).  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025).  Specifically, the noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted."  *Id.*; *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025).

### b.       Discretionary Detention under Section 1226(a)

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge.  *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020).  Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole."  8 U.S.C. § 1226(a)(1)-(2).

---

[3]       Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expediated removal proceedings.  *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii).  Noncitizens subject to expedited removal can avoid removal with successful asylum claims.  However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed.  *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).  Respondents do not assert that Mr. Brito Pacheco is subject to mandatory detention under § 1225(b)(1).

Section 1226(a) thus "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, 804 F. Supp. 3d 265, 268 (D. Mass. 2025). However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities. 8 U.S.C. § 1226(c)(1). None of those criminal activities is at issue here.

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8) (2025). If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA. 8 C.F.R. § 236.1(d)(3).

In *Jennings*, the Supreme Court provided guidance on the difference between the statutes, explaining that § 1225(b)(2) "authorizes the Government to detain certain aliens *seeking admission* into the country under," while § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.*

7

at 288 (explaining that, "once inside the United States" a noncitizen "*present in the country* may still be removed" under "Section 1226") (emphasis supplied)).

### 2.    Applicable Statutory Basis for Detention

As Respondents concede, recent decisions from district courts within the First Circuit and elsewhere have consistently rejected Respondents' interpretation of § 1225(b)(2)'s mandatory detention scheme under similar factual circumstances.  *See Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases); *Lopez v. Trump*, No. 2:25-cv-863, 2025 U.S. Dist. LEXIS 233128, at *6 (D. Vt. Nov. 17, 2025) (rejecting DHS's application of § 1225(b) mandatory detention to re-detain noncitizen originally released under § 1226(a)); *Caiza v. Scott*, 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 195270, at *7-8 (D. Me. Oct. 2, 2025) (collecting cases).

The phrase "'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action." *Martinez*, 792 F. Supp. 3d at 218.  As other courts to reach this issue have explained, 'seeking admission' "contemplates that those arriving, i.e. those who appear at the border or a port of entry, [who] must be inspected." *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 U.S. Dist. LEXIS 261199, at *18 (S.D.N.Y. Dec. 17, 2025); *see also Walizada v. Trump*, No. 2:25-cv-00768, 2025 U.S. Dist. LEXIS 256630, at *11 (D. Vt. Dec. 11, 2025) (same); *Rodriguez-Acurio v.*

*Almodovar*, No. 2:25-cv-6065 (NJC), 2025 U.S. Dist. LEXIS 233224, at *64-71 (E.D.N.Y. Nov. 28, 2025) (same); *Coalition for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 81-94 (D.D.C. 2025) (same).

As a noncitizen continuously residing in the United States since August 2022, Mr. Brito Pacheco is not "seeking admission," and he is therefore not subject to mandatory detention under § 1225(b)(2). *See Moraes v. Joyce*, No. 2:25-cv-00583-JAW, U.S. Dist. LEXIS 234386, at *9-10 (D. Me. Dec. 2, 2025); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025). Rather, as a noncitizen "already in the country pending the outcome of removal proceedings," Mr. Brito Pacheco is subject to discretionary detention under § 1226(a), *Jennings*, 583 U.S. at 289, and he is entitled to a bond hearing before an Immigration Judge. *See Hernandez-Lara*, 10 F.4th at 41.

Therefore, any determination as to Mr. Brito Pacheco's detention must be conducted under the discretionary detention framework of Section 1226(a), which "governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal," including expired parolees within the United States pending the adjudication of their asylum claim. *Tumba Huamani v. Francis*, No. 25-cv-8110 (LJL), 2025 U.S. Dist. LEXIS 219101, at *7 (S.D.N.Y. Nov. 4, 2025) (quoting *Jennings*, 583 U.S. at 288).

### 3. Detention without a Warrant

Mr. Brito Pacheco's petition also challenges his detention on the grounds that Respondents' failure to conduct an initial custody determination and issue a warrant authorizing his continued detention violates the INA, applicable regulations, and due

process.  *Am. Pet.* ¶¶ 26-29; *Pet'r's Reply* at 13-15.  He maintains that his ongoing detention is unlawful and, because Respondents never performed an initial custody determination or ever produced a warrant authorizing his ongoing detention, the appropriate remedy is his immediate release pending a bond hearing before an Immigration Judge.  *Pet'r's Reply* at 14-15.

Discretionary detention under § 1226(a) requires a warrant.  *See Jennings*, 583 U.S. at 302; *see also Chogllo Chafla*, 804 F. Supp. 3d at 256-61 ("[A]bsent a warrant a noncitizen may not be . . . detained under [§] 1226(a)").  Although the INA provides limited exceptions for warrantless interrogations and arrests, in order to continue to detain a noncitizen under § 1226, federal law, applicable agency regulation, and caselaw from this District require immigration authorities to conduct an initial custody determination and obtain a post-hoc warrant within forty-eight hours of initially detaining the noncitizen.  *See Makuiza v. Wesling*, No. 2:26-cv-00044-LEW, 2026 U.S. Dist. LEXIS 18216, at *3-12 (D. Me. Jan. 30, 2026) (citing 8 U.S.C. §§ 1226(a), 1357(a); 8 C.F.R. §§ 236.1(c)(8), 287.3(d)).  In other words, "when arrests are made without a warrant, a custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued post hoc."  *Id.* at *5-6, *7-13 (citing 8 C.F.R. § 287.3(d)) (ordering § 1226(a) immigration detainee released after authorities failed to conduct an initial custody determination and obtain a post-hoc warrant justifying continued detention within forty-eight hours of warrantless arrest).

The Court agrees with Mr. Brito Pacheco that because he is subject to discretionary detention under § 1226(a), Respondents are required by law to conduct and initial custody determination within forty-eight hours of his detention, accompanied by a post-hoc warrant. However, the Court does not agree that this conclusion requires his immediate release. Instead, the Court concludes that the forty-eight-hour clock for Respondents to conduct an initial custody determination begins at the date and time of this order. Unlike in *Makuiza*, in which the Government initially detained the noncitizen pursuant to § 1226(a) but "neglected to" "justify[ ] its arrest decision[ ]," *id.* at *3-4, 11, in this case, Respondents do not concede Mr. Brito Pacheco is subject to § 1226(a) but rather maintain, consistent with controlling agency precedent, he is subject to mandatory detention under § 1225(b)(2), which does not require an initial custody determination or warrant. *Resp'ts' Opp'n* at 1-2 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sep. 5, 2025)). Moreover, to retroactively apply the Court's § 1226(a) determination in this matter would place Respondents in the untenable position in future cases presenting similar circumstances, in which Respondents must decide whether to deliberately violate controlling agency precedent in anticipation of a possible objection a detainee may or may not raise in a future habeas petition not yet before this Court, and then further guess how this Court might rule. *See Yepez v. Stamper*, 1:26-cv-00113-JAW, 2026 U.S. Dist. LEXIS 56166, at *18 (D. Me. Mar. 18, 2026).

Rather, in this case, given that Respondents have maintained since his arrest, that Mr. Brito Pacheco is subject to mandatory detention under § 1225(b)(2), the

11

forty-eight-hour custody determination clock begins to run at the time of this Court's determination that Mr. Brito Pacheco is subject to § 1226(a). *Id.* Accordingly, the Court will order Respondents to conduct an initial custody determination of Mr. Brito Pacheco pursuant to § 1226(a), at which point they may either release him or continue to detain him. If Respondents continue his detention, they must obtain an authorizing warrant and, as the Court concludes below, later provide Mr. Brito Pacheco a bond hearing before an Immigration Judge.

### 4. Bond Hearing

Because Mr. Brito Pacheco is currently in the United States, he is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 31 (D. Mass. 2025), which provides that he will not be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). As the petitioner, however, Mr. Brito Pacheco bears the burden of demonstrating by a preponderance of the evidence that his detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira v. Joyce*, 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).

To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hernandez-Lara*, 10 F.4th at 27-28; *see also Chogllo Chafla*, 804 F. Supp. 3d 247 at 261-264 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao,* 799 F. Supp 3d at 30, 34 (same). Under *Mathews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a.    Private Interest

In his petition, Mr. Brito Pacheco asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects"). A noncitizen subject detained under § 1226(a) vindicates their due process rights through a bond hearing before an Immigration Judge who requires the government either to (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by the preponderance of the

13

evidence that they pose a flight risk in order to detain them throughout the pendency of their removal proceedings. *See Hernandez-Lara*, 10 F.4th at 41. In this case, Respondents have refused Mr. Brito Pacheco the bond hearing he is guaranteed under § 1226(a) and have failed to meet their burden for his continued detention as due process requires. Mr. Brito Pacheco has therefore clearly established the first *Mathews* factor weighs in his favor.

### b.    Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of erroneous deprivation is large where, as here, Respondents have made no showing that Mr. Brito Pacheco presents any public safety or flight risk. Accordingly, the second *Mathews* factor also weighs heavily in his favor.

### c.    Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Respondents do not raise any governmental interest favoring Mr. Brito Pacheco's continued detention without a bond hearing. *See Chogllo Chafla*, 804 F. Supp. 3d at 263 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See*

14

*Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Mathews* factor weighs against Respondents and in favor of Mr. Brito Pacheco.

The Court concludes that Respondents' detention of Mr. Brito Pacheco without a bond hearing pursuant to § 1226(a) therefore violates his due process rights.

## IV.    CONCLUSION

The Court GRANTS in part and DENIES in part Carlos Alberto Brito Pacheco Amended Verified Petition for Writ of Habeas Corpus Pursuant to Fed. R. of Civ. P. 15(a)(1)(A) and R. 65(a) (ECF No. 12) and DISMISSES as moot his Verified Petition for Writ of Habeas Corpus (ECF No. 1). The Court ORDERS Respondents to conduct an initial custody determination of Mr. Brito Pacheco pursuant to 8 U.S.C. § 1226(a) and associated agency regulation within forty-eight hours of the time and date of this order. If Respondents release Mr. Brito Pacheco, the Court ORDERS Respondents to return any of Mr. Brito Pacheco's personal property in their possession to him at the time of release. If Respondents continue Mr. Brito Pacheco's detention, the Court ORDERS Respondents to provide Mr. Brito Pacheco a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of that custody determination. The Court further ENJOINS Respondents from denying Mr. Brito Pacheco an initial custody determination or a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to him.

Lastly, the Court ORDERS Respondents to file a status report within twenty-four hours of conducting his initial custody determination, stating whether

Respondents released or continued detaining Mr. Brito Pacheco, accompanied by the grounds supporting their determination and the warrant authorizing continued detention. If Respondents continue detaining Mr. Brito Pacheco, the Court ORDERS Respondents to file a status report within five days of Mr. Brito Pacheco's bond hearing, stating whether he has been granted bond, and, if his request was denied, the reasons for that denial.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2026

16